# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

**FILED**

**APRIL 23, 2008**

**'J N**     APR 2 3 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 08CV2309 |
| | ) | JUDGE ASPEN |
| 6554962 CANADA INC., a corporation, | ) | MAG. JUDGE ASHMAN |
| also d/b/a UNION CONSUMER | ) | |
| BENEFITS, and | ) | |
| | ) | |
| NAEEM ALVI, individually and as an | ) | |
| officer and director of the corporate | ) | |
| defendant, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PERMANENT
## INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its complaint alleges:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101 - 6108, to

obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of

contracts, restitution, disgorgement of ill-gotten monies, and other equitable relief for

Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and

in violation of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3.      Venue is proper in this District under 28 U.S.C. § 1391(d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      Plaintiff FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41 - 58. The FTC is charged, *inter alia*, with enforcement of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce. The FTC is also charged with enforcement of the Telemarketing Act, 15 U.S.C. §§ 6101 - 6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR, and to secure such equitable relief as may be appropriate in each case, including restitution and disgorgement. 15 U.S.C. §§ 53(b), 57b, 6102(c), and 6105(b).

## DEFENDANTS

5.      Defendant 6554962 Canada Inc., also d/b/a Union Consumer Benefits ("UCB"), is a Canadian corporation with its registered office at 7080 Cote-Des Neiges, Montreal, Quebec, Canada H3R 2L9. UCB transacts or has transacted business in this District.

6.      Defendant Naeem Alvi ("Alvi") is an officer and director of UCB. Alvi resides in Quebec, Canada. In connection with the matters alleged herein, Alvi has transacted business in this District. At all times material to this complaint, acting alone or in concert with others, Alvi has formulated, directed, controlled, or participated in the acts and practices of UCB, including

2

the acts and practices set forth in this complaint.

## DEFENDANTS' BUSINESS ACTIVITIES

7.      UCB is a seller of purported medical discount plans to consumers.  UCB is also a telemarketer that initiates outbound telephone calls to consumers in the United States to induce the purchase of UCB's goods or services.

8.      Defendants have engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than one interstate telephone call.

9.      At all times relevant to this complaint, Defendants have maintained a substantial course of trade or business in the offering for sale and sale of goods or services via the telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

10.      Since at least 2006, Defendants have engaged in a deceptive telemarketing campaign aimed primarily at elderly consumers throughout the United States.  Defendants' telemarketers rarely, if ever, make a straightforward sales pitch.  Their main objective is to obtain consumers' bank account information so that UCB can debit funds from the consumers' accounts.

11.      Defendants' telemarketers use various tactics to persuade consumers to divulge their bank account information.  In many instances, the telemarketers falsely state or imply that they are calling from, or about, government programs such as Medicare or Social Security.  In other instances, the telemarketers falsely state or imply that they are calling from, or on behalf of, consumers' banks.  The telemarketers confuse and mislead consumers by failing to promptly and truthfully disclose that they represent UCB, that the purpose of the call is to sell goods or

3

services, and the nature of the goods or services.

12.    Defendants' telemarketers often represent that they can provide consumers with substantial discounts, up to 60 percent or more, on medical services and prescriptions. In some instances, the telemarketers quote a one-time fee for access to these discounts, but in other cases the telemarketers tell consumers, or lead them to believe, that there is no charge. In some instances, the telemarketers state or imply that the discount plan they are offering is part of the Medicare prescription drug program.

13.    In fact, Defendants operate from a call center in Montreal, Canada, or other locations outside the United States. Defendants have no connection to Medicare, or the Medicare prescription drug program, which expressly forbids signing up consumers through outbound telemarketing calls.

14.    After obtaining consumers' account information, Defendants debit funds, typically $399, from consumers' bank accounts, generally using unsigned checks that consumers supposedly have authorized over the telephone. The unsigned checks, also known as "demand drafts," are payable to "Union Consumer Benefits" or "Union Cons Benefits" or similar variations of the company's name. In many instances, UCB's withdrawals are unauthorized; and consumers do not even know their accounts have been debited until their bank statement arrives, or their bank notifies them that their account is overdrawn.

15.    Some consumers subsequently receive a package in the mail from "Union Consumer Benefits." The return address on the package is not the company's real address in Montreal, Canada. Instead, the mailing label lists a P.O. Box in Plattsburgh, New York. The package contains brochures and a price list for buying discount prescription drugs from Canada. The brochures reference a website where the same information about Canadian drugs is available

4

to the public for free.

16.     The package also includes a membership card supposedly entitling consumers to receive discounts on prescription drugs at "participating pharmacies" in the United States. The card is designed to look like a real discount card, and includes the unauthorized use of the logo and toll-free telephone number of a U.S.-based discounter. In fact, the card is inoperative, and does not provide any discounts.

17.     On or after October 17, 2003, Defendants have called, or have caused telemarketers to call, consumers' telephone numbers that are on the National Do Not Call Registry. By this means, Defendants contact consumers who are, as a matter of law, off-limits to Defendants' telemarketers, obtain the consumers' bank account information, and then withdraw $399 from the consumers' accounts.

18.     On or after October 17, 2003, Defendants have called, or have caused telemarketers to call, telephone numbers in various area codes without first paying the required annual fee for access to the telephone numbers within such area codes that are included in the National Do Not Call Registry.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

19.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

### Count I

20.     In numerous instances, in connection with the marketing of goods or services, Defendants represent, directly or indirectly, expressly or by implication, that they are calling from, on behalf of, or are otherwise affiliated with government programs, such as Medicare or Social Security, or consumers' banks.

5

21. In truth and in fact, Defendants are not calling from, on behalf of, or otherwise affiliated with government programs, such as Medicare or Social Security, or consumers' banks.

22. Therefore, Defendants' representation as set forth in Paragraph 20 of this Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count II

23. In numerous instances, in connection with the marketing of goods or services, Defendants represent, directly or indirectly, expressly or by implication, that they will provide consumers with substantial discounts on medical care and prescriptions in exchange for a one-time fee.

24. In truth and in fact, Defendants do not provide consumers with substantial discounts on medical care and prescriptions in exchange for a one-time fee.

25. Therefore, Defendants' representation as set forth in Paragraph 23 of this Complaint is false and misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### <u>VIOLATIONS OF THE TELEMARKETING SALES RULE</u>

26. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101 - 6108, in 1994. On August 16, 1995, the FTC adopted the Telemarketing Sales Rule (the "Original TSR"), 16 C.F.R. Part 310, which became effective on December 31, 1995. On January 29, 2003, the FTC amended the Original TSR by issuing a Statement of Basis and Purpose and the final amended Telemarketing Sales Rule (the "TSR"). 68 Fed. Reg. 4580, 4669.

27. Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing," as

6

defined by the TSR, 16 C.F.R. § 310.2(z), (bb), and (cc).

28.    The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any of the following material information:

a.    Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer.  16 C.F.R. § 310.3(a)(2)(iii).

b.    A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.  16 C.F.R. § 310.3(a)(2)(vii).

29.    It is an abusive telemarketing act or practice and a violation of the TSR for any seller or telemarketer to cause billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor.  16 C.F.R. § 310.4(a)(6).

30.    It is an abusive telemarketing act or practice and a violation of the TSR for a telemarketer in an outbound telephone call to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information, among other information: (1) the identity of the seller; (2) that the purpose of the call is to sell goods or services; and (3) the nature of the goods or services.  16 C.F.R. § 310.4(d).

31.    The TSR also established a "do-not-call" registry (the "National Do Not Call Registry" or "Registry"), maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls.  Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

32.    Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at www.donotcall.gov, or by otherwise contacting law enforcement authorities.

33.    On or after September 2, 2003, the FTC allowed sellers, telemarketers, and other permitted organizations to access the Registry over the Internet at www.telemarketing.donotcall.gov, pay the required fee, and download the registered numbers.

34.    Since October 17, 2003, sellers and telemarketers subject to the FTC's jurisdiction have been prohibited from calling numbers on the Registry in violation of the TSR. 16 C.F.R. § 310.4(b)(1)(iii)(B).

35.    Since October 17, 2003, sellers and telemarketers have been generally prohibited from calling any telephone number within a given area code unless the seller first has paid the annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry.  16 C.F.R. § 310.8(a) and (b).

36.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count III – Misrepresenting the Characteristics of Goods or Services

37.    In numerous instances, in the course of telemarketing goods or services, Defendants have misrepresented, directly or by implication, material aspects of the performance, efficacy, nature, or central characteristics of the goods or services they sell, including that they will provide consumers with substantial discounts on medical care and prescriptions in exchange

8

for a one-time fee.

38.    Defendants' practice as alleged in Paragraph 37 is a deceptive telemarketing practice that violates Section 310.3(a)(2)(iii) of the TSR, 16 C.F.R. § 310.3(a)(2)(iii).

### Count IV – Misrepresenting Affiliation with Government Programs or Banks

39.    In numerous instances, in the course of telemarketing goods or services, Defendants have misrepresented, directly or by implication, that they are calling from, on behalf of, or are otherwise affiliated with government programs, such as Medicare or Social Security, or consumers' banks.

40.    Defendants' practice as alleged in Paragraph 39 is a deceptive telemarketing practice that violates Section 310.3(a)(2)(vii) of the TSR, 16 C.F.R. § 310.3(a)(2)(vii).

### Count V – Lack of Express Informed Consent to be Billed

41.    In numerous instances, in the course of telemarketing goods or services, Defendants have caused billing information to be submitted for payment without the express informed consent of the consumer.

42.    Defendants' practice as alleged in Paragraph 41 is an abusive telemarketing act or practice that violates Section 310.4(a)(6) of the TSR, 16 C.F.R. § 310.4(a)(6).

### Count VI – Failing to Make Required Oral Disclosures

43.    In numerous instances, in the course of telemarketing goods or services, Defendants in an outbound telephone call have failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, (1) the identity of the seller; (2) that the purpose of the call is to sell goods or services; and (3) the nature of the goods or services.

44.    Defendants' practice as alleged in Paragraph 43 is an abusive telemarketing

9

practice that violates Section 310.4(d) of the TSR, 16 C.F.R. § 310.4(d).

### Count VII – Calling Telephone Numbers on National Do Not Call Registry

45.    In numerous instances, in the course of telemarketing goods or services, Defendants engaged in or caused others to engage in initiating an outbound telephone call to a person when that person's telephone number is on the National Do Not Call Registry.

46.    Defendants' practice as alleged in Paragraph 45 is an abusive telemarketing practice that violates Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

### Count VIII – Failing to Pay Fee for Access to National Do Not Call Registry

47.    In numerous instances, in the course of telemarketing goods or services, Defendants have initiated, or caused others to initiate, an outbound telephone call to a telephone number within a given area code without Defendants, either directly or through another person, first paying the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry.

48.    Defendants' practice as alleged in Paragraph 47 violates Section 310.8 of the TSR, 16 C.F.R. § 310.8.

### CONSUMER INJURY

49.    Consumers in the United States have suffered and will continue to suffer injury as a result of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

50.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the FTC Act.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission of contracts and restitution, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

51.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission and reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, and an order freezing assets;

B.     Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the

11

disgorgement of ill-gotten monies; and

    D.    Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Respectfully submitted,

WILLIAM BLUMENTHAL
General Counsel

Dated: April 23, 2008.

GUY G. WARD
Federal Trade Commission
55 W. Monroe St., Suite 1825
Chicago, IL 60603
(312) 960-5634
(312) 960-5600 (fax)

Attorney for Plaintiff
FEDERAL TRADE COMMISSION